**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Footprint International, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Footprint Asia Limited, et al.,<br><br>Defendants. | No. CV-24-00093-PHX-DGC<br><br>**ORDER** |

On February 2, 2024 Plaintiff moved for permission to serve process on China-based Defendants Footprint Asia Limited ("FPA"), Chua Eu Hong ("Chua"), and Shanghai Footprint Lvke Environmental Protection Technology Group Co., Ltd., d/b/a/ G-COVE ("G-COVE") by emailing the summonses and complaint to known email addresses used in their business dealings. Doc. 18. Defendants, who had not yet appeared by counsel, did not respond, and the Court granted Plaintiff's motion. Doc. 19. On February 26, 2024, Defendants filed a motion for reconsideration under Local Rule 7.2(g), asking the Court to set aside the order permitting alternative service, quash the email service allowed under the order, and require Plaintiff to serve Defendants through the Hague Convention On the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). Doc. 36. The motion is fully briefed. Docs. 54, 56. For reasons stated below, the Court will deny the motion.[1]

---

[1] Defendants dispute whether an entity exists with the name "Shanghai Footprint Lvke Environmental Protection Technology Group Co., Ltd. d/b/a/ G-COVE." In their

1

I.    **Legal Standard.**

    A.    **Motion for Reconsideration.**

Motions for reconsideration are disfavored and rarely granted. *See Nw. Acceptance Corp. v. Lynwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988); *Resolution Tr. Corp. v. Aetna Cas. & Sur. Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994). A motion is appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision is manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cty v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see* LRCiv 7.2(g)(1).

II.   **Discussion.**

    A.    **Defendants FPA and G-COVE.**

Defendants seek reconsideration of the alternative service on FPA and G-COVE. Doc. 36. They contend that Plaintiff did not fairly represent the law on the Hague Convention in its motion for alternative service, and that Defendants did not have reason to oppose the motion because they had not been served when it was filed. *Id.* at 2.

The Hague Convention seeks to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash Inc. v. Menon*, 581 U.S. 271, 273 (2017). It "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Id.* (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)). The treaty requires each signatory state to establish a central authority to receive requests for service of documents from other countries. *See* Articles 2-7, 20 U.S.T. 361. The central authority "must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law." *Water Splash*, 581 U.S. at 699. Unless a party objects, the treaty provides alternative methods of service, including by diplomatic and consular agents, though consular channels, on judicial officers in the receiving country,

---

motion, Defendants acknowledge that Chua and FPA have ownership interests in several companies with "G-COVE" in their name, and state that the parties are discussing which G-COVE entity Plaintiff intended to name in their complaint. Doc. 36 at 1 n. 1. Defendants file their motion on behalf of whichever G-COVE entity is eventually named.

and through postal channels. *See* Articles 8-10, 20 U.S.T. 361. China has objected to these alternative methods of service.

Federal Rule of Civil Procedure 4(f) outlines how service may be completed on an individual located outside the United States, and Rule 4(h)(2) adopts the same procedure for business entities:

> (1)   by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on Service Abroad of Judicial and Extra Judicial Documents;
>
> (2)   if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: . . . .
>
> (3)   by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)-(3).

In its motion for alternative service (Doc. 18) and in its response to Defendants' motion for reconsideration (Doc. 54), Plaintiff argues that, under Ninth Circuit law, a party may request alternative service under Rule 4(f)(3) without first attempting service under the Hague Convention in accordance with Rule 4(f)(1). Plaintiff relies on *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002), in which the Ninth Circuit allowed defendants to be served by email under Rule 4(f)(3). Relying on the structure and language of Rule 4, the Ninth Circuit concluded that service under Rule 4(f)(3) was "neither a last resort nor extraordinary relief[,]" and that "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." *Id.* Many district courts – including this Court without the benefit of full briefing – have interpreted this language to mean that courts have the option of granting alternative service under Rule 4(f)(3) even when the Hague Convention applies. *See, e.g.*, *In re LDK Solar Sec. Litig.*, No. C 07-05182, 2008 WL 2415186 (N.D. Cal. June 12, 2008); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560 (C.D. Cal. 2012); *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C06-06572, 2007 WL 1140639 (N.D. Cal. Apr. 17, 2007).

The Court now concludes that this reading stretches *Rio Properties* too far. The Ninth Circuit was not considering whether it should first require service under the Hague Convention when assessing the plaintiff's request for service under Rule 4(f)(3) – the defendants in *Rio Properties* were in Costa Rica, a non-signatory of the Hague Convention. The court explained in a footnote that "[a] federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1). The parties agree, however, that the Hague Convention does not apply in this case because Costa Rica is not a signatory." *Rio Prop.*, 284 F.3d at 1015 n.4.

The district court in *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Technology Co., Ltd*, provided this helpful analysis:

> *Rio* interpreted Rule 4(f), not the Hague Service Convention; and when the Convention applies, it must be considered. The Convention is a ratified, self-executing treaty, and as such is "the supreme law of the land." *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986) (citation omitted); *see also Trask v. Serv. Merch. Co.*, 135 F.R.D. 17, 21 (D. Mass. 1991) (identifying the Convention as "self-executing"). And when there is tension between a federal statute or federal rule, on the one hand, and a treaty like the Convention, on the other, the two are to be interpreted "to avoid conflicts." *Saleh v. Bush*, 848 F.3d 880, 891–92 & n. 9 (9th Cir. 2017).

480 F. Supp. 3d 977, 985-86 (N.D. Cal. 2020). The Advisory Committee Notes to Rule 4(f) support this conclusion: "Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service." Fed. R. Civ. P. 4 Advisory Committee Notes (1993). The Supreme Court has also said that "compliance with the Convention is mandatory in all cases to which it applies." *Schlunk*, 486 U.S. at 705.

Because FPA and G-COVE are located in China, a signatory to the Hague Convention, Plaintiff must attempt to comply with Convention requirements before seeking alternative service through the Court, unless an exception to the Convention applies. *See Facebook*, 480 F. Supp. at 986; *Fellow Indus., Inc. v. Turlyn Int'l, Inc.*, No. 23-CV-02270, 2023 WL 5239638 at *2-3 (N.D. Cal. Aug. 15, 2023). As Defendants

4

acknowledge, however, there are several exceptions. Doc. 56 at 5. They include when the address of the person to be served is not known, Article 1, 20 U.S.T. 361; where a plaintiff may make valid service on a domestic agent of the foreign party, *Schlunk,* 486 U.S. at 707; and in cases of "urgency," where the Convention permits courts "to issue any provisional or protective measures." *D Squared Plant Traps LLC v. Guangdong Bixing Trading Co., LTD.*, No. 23-CV-1907, 2024 WL 503628 (W.D. Pa. Feb. 8, 2024) (citing Article 15, 20 U.S.T. 361); *Fellow*, 2023 WL 5239638 at *3.

The Convention does not define "urgency." *D Squared*, 2024 WL 503628 at *3. Some courts hold that urgency exists when a plaintiff will suffer irreparable harm in the time it would take to serve the defendant under the Convention. In *Lonati, S.p.A. v. Soxnet, Inc.*, No. CV 20-5539, 2021 WL 9839476 (C.D. Cal. Sept. 20, 2021), the court allowed service by email on a China-based defendant when the plaintiff alleged irreparable harm in the form of lost sales to a competitor, loss of future business, loss of future customers, and loss of future goodwill. The court reasoned that "allowing alternative service under the urgency exception of Article 15 of the Hague Convention . . . comports with the requirements of Federal Rule of Civil Procedure 4(f)(3)." *Id.* at *3. Similarly, in *WeWork Companies, Inc. v. WePlus (Shanghai) Tech Co.*, No. 5:18-CV-04543, 2019 WL 8810350, (N.D. Cal. Jan. 10, 2019), a plaintiff alleged that alternative service under Rule 4(f)(3) was necessary because (1) service under the Hague Convention would take several months and (2) in the absence of swift service, the plaintiff would suffer irreparable injury to its reputation and goodwill. The court found that the plaintiff faced immediate, irreparable harm considering the defendants' alleged infringing use of the plaintiff's trademarks and attempts to deceive consumers as to whether defendant was a partner of the plaintiff. *Id.* at *3. The court found "these circumstances justify the immediacy of service by email" and distinguished the case from those where plaintiffs sought an exception but made no "comparable allegations of immediate, irreparable harm." *Id.*; *see also Microsoft Corp. v. Goldah.com Network Tech. Co.*, 2017 WL 4536417 at *5 (N.D. Cal. Oct. 11, 2017) (finding that the ongoing risk of immediate and substantial harm was an example of the type of

"urgency" that will justify an order of alternative service "even if other methods of service remain incomplete or unattempted"); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460, 2011 WL 2607158 at *13 (N.D. Cal. July 1, 2011) (finding plaintiff's evidence that service through the Convention would take six to eight months, coupled with their claims of immediate, irreparable harm if they could not obtain preliminary relief, sufficient to show urgency).

In its motion for alternative service, Plaintiff argued that service through China's central authority would take many months, during which Plaintiff would suffer irreparable harm. Doc. 18 at 3 (citing to Plaintiffs motion for preliminary injunction (Doc. 5), filed two weeks prior). Plaintiff alleged it faced irreparable threats to its brand, business interests, and reputation without immediate court intervention. Doc. 5 at 16-17. Plaintiff claimed it had lost multiple customers as a result of Defendants' creating a competing business and misappropriating their proprietary and confidential information, and that there was a high risk consumers would be misled into believing Defendants' products were made by Plaintiff. *Id.* Plaintiff provided declarations of employees Brendan Moore and Will Stevens, both of whom swore they found products not produced by Plaintiff, but made with Plaintiff's designs, in customer retailers. *See* Doc. 5-1 at 6, 9-10. Plaintiff produced screenshots of a G-COVE website that appeared to use Plaintiff's mark. Doc. 5-3 at 21. And Plaintiff alleged an instance where product made by Defendant to look like Plaintiff's was made using non-sustainable materials, putting Plaintiff's reputation as a sustainable retailer at risk. Doc. 5-1 at 6.

In an affidavit attached to their motion for alternative service, Plaintiff's counsel avowed they had engaged a vendor to discuss service on the China-based defendants. *See* Doc. 18-1 ¶ 14. The vendor reported that service would take between 18 and 24 months following submission of the appropriate paperwork to the Chinese central authority, though Plaintiff's counsel acknowledged that another source estimated the service time at "around six months." *Id.* ¶ 15.

Based on this evidence, the Court determined that Plaintiff faced irreparable harm, that service under the Convention would take months or even years to complete, and, given this urgency, that service by email was an appropriate "provisional or protective measure."[2] The Court later denied Plaintiff's preliminary injunction motion, but only after receiving Defendant's response, holding a hearing, and considering a more complete record. Docs. 30, 41. Given the record available when Plaintiff's motion for alternative service was considered, the Court did not commit clear error in granting Plaintiff's request. *See* LRCiv 7.2(g)(1).

Defendants contend that new information presented as part of the preliminary injunction briefing constitutes grounds for reconsidering the order. Docs. 36 at 12, 56 at 3. But LRCiv 7.2(g)(1) allows reconsideration only when there is a "showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." Although Defendants had not yet been served when Plaintiff filed their motion for alternative service, an affidavit filed with Plaintiff's motion suggests that Defendants were aware of the preliminary injunction motion and motion for alternative service. On January 18, 2024, Defendant Chua, FPA's President, was notified through WeChat messenger that he, FPA, and G-COVE were being sued, that Plaintiff was seeking a preliminary injunction, and that Plaintiff would be filing a motion to serve all Defendants by email. Docs. 5 at 5, 18-1 ¶ 10. In the same message, Defendant Chua was informed the Court would be holding a status conference the following day. On January 19, 2024, Plaintiff's counsel was informed that Defendants had been referred to an Arizona law firm,

---

[2] The parties disagree on whether service by e-mail is appropriate on a China-based defendant given that China has expressly objected to Article 10 of the Hague Convention, which authorizes service via "postal channels," and given that Rule 4(f)(3) authorizes service only to the extent it is not prohibited by international agreement. *See* Docs. 54 at 13-17, 56 at 10-11. But service was authorized under an exception to the Convention, which necessarily meant the formalities of the Convention did not apply, including any limitation on e-mail service. *Lonati*, 2021 WL 9839476 at *3 ("Plaintiffs seek to effect alternative service through a fax number and four separate email addresses. Alternative service in case of urgency, as here, is not expressly prohibited by an international agreement but is expressly *allowed* as an exception to the usual requirements of the Hague Convention.") (citations omitted); *see also Goes Int'l, AB v. Dodur Ltd.*, No. 14-CV-5666, 2015 WL 1743393 at *3 (N.D. Cal. Apr. 16, 2015); *Amazon.com Inc. v. Sirowl Tech.*, No. 20-CV-01217, 2020 WL 7122846, at *3 (W.D. Wash. Dec. 4, 2020).

7

and an attorney from that firm attended but did not participate in the status conference. *Id.* ¶ 11. Thus, it appears Defendants knew of this case by the time Plaintiff's motion for alternative service was filed on February 2, 2024, and could have raised their arguments with reasonable diligence at that time. The Court did not commit clear error in determining that Plaintiff was exempt from complying with the Hague Convention due to urgency, and the Court will deny Defendants' motion for reconsideration with respect to FPA and G-COVE.[3]

### B.     Defendant Chua.

Plaintiff also requested and the Court ordered service on Defendant Chua through his business email under Federal Rule of Civil Procedure 4(f)(3). As Defendants acknowledge, the Hague Convention does not apply where the address of the person to be served is unknown. Doc. 56 at 5; *see also Facebook, Inc.*, 380 F. Supp. 3d at 980 (citing Article 1, 20 U.S.T. 361). An address is unknown when it cannot be ascertained despite reasonable diligence. *Yates v. Yee Mei Cheung*, No. C10-5404, 2012 WL 3155700 (N.D. Cal. Aug. 2, 2012); *see also Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, No. CV-23-01455, 2024 WL 770747 (D. Ariz. Feb. 23, 2024).

Plaintiff made reasonably diligent efforts to locate the address of Chua. Their China-based colleagues searched publicly available records, websites, and databases to locate his personal address. Doc. 54-1 ¶¶ 6-7. Counsel engaged a vendor that specializes in service abroad, whose investigator searched for Chua's address in China. *Id.* ¶¶ 10-11. Beginning on January 12, 2024, Plaintiff and Plaintiff's counsel attempted to contact Chua regarding this lawsuit through Chua's telephone number, email, WeChat, and mailings to FPA's business address, with no response. *Id.* ¶¶ 4, 6; Doc. 18-1 ¶¶ 3-12.

An alternative method of service must be reasonably calculated to apprise the defendants of the pendency of the case. *See Rio Props.*, 248 F.3d at 1016. Plaintiff sought permission to serve Chua through his business email address – the address through which

---

[3] Defendants assert, somewhat circularly, that "they had no reason to file an opposition to the Motion for Alternative Service, as they had not been served." Doc. 36 at 2. But they clearly did have a reason – to ensure the Court's decision on alternative service considered their arguments and evidence.

8

they regularly communicated with him. Doc. 18 at 2-3. This method was reasonably calculated to apprise him of the pendency of this case. *See Rio Props.*, 248 F.3d at 1016 ("trial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email"); *Color Switch LLC v. Fortafy Games DMCC*, No. 1:18-CV-0419, 2018 WL 2298401 at *3 (E.D. Cal. May 21, 2018) (allowing service on foreign defendant via email where defendant's address could not be obtained); Doc. 18-1 at 8-9 (declaration of Collin Euteneuer that Footprint and Chua routinely communicated via Chua's email address).

In asking the Court to reconsider its ruling, Chua asserts that Plaintiff could have simply asked him or his counsel for his address. Docs. 36 at 4, 56 at 6. But Chua did not respond to the various communications sent to him about this lawsuit. And it seems a bit contradictory for Defendants to contend that they were not sufficiently involved in this case to provide briefing on the motion for alternative service, and yet were sufficiently involved for Plaintiff to know they could provide Chua's address. When the Court granted Plaintiff's motion, Plaintiff had made reasonable but unsuccessful efforts to obtain Chua's address and therefore qualified for an exception to the Hague Convention. The Court will not reverse its order and revoke email service because Chua is now willing to supply his contact information.

**IT IS ORDERED** that Defendants' motion for reconsideration (Doc. 36) is **denied.**

Dated this 9th day of April, 2024.

David G. Campbell
Senior United States District Judge